IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

BRYAN LEE TOVAR
aka AMAYA MARIE TOVAR,

    Plaintiff,

v.                                                  Case No. 2:23-cv-00397

WILLIAM K. MARSHALL, III, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the following motions: Defendants Elaine J. Gedman and Wexford Health Sources, Inc.'s Motion to Dismiss [ECF No. 19]; Defendant William K. Marshall, III's Motion to Dismiss [ECF No. 22]; Plaintiff's Motion for Appointment of Counsel [ECF No. 25]; Plaintiff's Motion to Compel Defendants to Produce Documents [ECF No. 26]; and Defendant Marshall's second Motion to Dismiss [ECF No. 42], in which Gedman and Wexford join [ECF No. 45]. By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge, for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this matter to the Magistrate Judge is **WITHDRAWN,** and the undersigned will proceed to rule on the pending motions.

I.   **Plaintiff's Allegations and Pending Motions.**

While incarcerated as a sentenced West Virginia prisoner at the St. Marys Correctional Center ("SMCC"), Plaintiff filed the instant complaint under 42 U.S.C. § 1983 against West Virginia Division of Corrections and Rehabilitation ("WVDCR") Commissioner William K. Marshall, III ("Marshall"), Wexford Health Sources, Inc. ("Wexford"), and Wexford's Executive Vice President, Elaine J. Gedman ("Gedman") (collectively "the Wexford Defendants"). The complaint challenges the lawfulness of WVDCR Policy Directive 411.00 ("P.D. 411.00") concerning treatment or accommodations for transgender inmates.

Plaintiff alleges that she is a transgender female, suffering from "gender dysphoria" and/or "gender identity disorder" ("GID"), who has been denied gender-reassignment surgery[1] and other gender-affirming care under P.D. 411.00, which requires "real-life experience" (outside of the correctional setting) prior to approval for gender-reassignment surgery. [ECF No. 2 at 1-2, 4]. Plaintiff contends that this requirement poses an unconstitutional bar on surgical intervention for treatment of gender dysphoria. She further contends that Defendants have "consciously disregarded [her] serious medical need for effective treatment for gender dysphoria" and "caused a distinct disability" through "severe mental anguish" because she will "never look as she feels she is, a female." [*Id.* at 2]. Plaintiff further claims that she

---

[1] Plaintiff's complaint interchangeably uses the terms "gender reassignment surgery" and "sex reassignment surgery." Because P.D. 411.00 uses "gender-reassignment surgery," the Court will use that terminology throughout this opinion. [*See* P.D. 411.00, Gender Nonconforming Inmates/Residents, ECF No. 2-1 at 27, (Ex. 8)].

has "self-medicated" by "cutting her arms because the physical pain helped ease her 'emotional torment and anguish.'" [*Id.* at 4].

Plaintiff is receiving hormone replacement therapy and is permitted to wear feminine clothing, hairstyles, and makeup. [*Id.* at 3-4]. However, she further claims that, although she was evaluated in 2021 for gender-reassignment surgery, breast augmentation, hair implants, and hair removal by electrolysis, the same was denied by Wexford pursuant to P.D. 411.00. [*Id.* at 4]. Plaintiff alleges that P.D. 411.00's restrictions violate the Eighth Amendment's Cruel and Unusual Punishment Clause, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and the Americans with Disabilities Act ('ADA"), 42 U.S.C. 12101 *et seq.* [*Id.* at 1-2]. The complaint seeks declaratory and injunctive relief requiring revision of P.D. 411.00 and Plaintiff's referral for evaluation for gender-reassignment surgery, breast augmentation, hair removal by electrolysis, and voice therapy. [*Id.* at 12-13]. Plaintiff also makes a passing request for "punitive damages" against each defendant, but fails to make any claim for compensatory damages, which is a prerequisite for punitive damages. [*Id.* at 13].

On October 4, 2023, the Wexford Defendants filed a Motion to Dismiss [ECF No. 19] and Memorandum of Law [ECF No. 20] asserting that Plaintiff's complaint fails to state a claim upon which relief can be granted against them. On October 16, 2023, Defendant Marshall also filed a Motion to Dismiss [ECF No. 22] and Memorandum of Law [ECF No. 23] asserting that Plaintiff's complaint fails to state a plausible claim for relief against him. Plaintiff responded in opposition to both

3

motions [ECF Nos. 28, 29], and Defendants filed reply briefs [ECF Nos. 29, 35]. Thereafter, Plaintiff filed an unauthorized sur-reply to Marshall's motion to dismiss [ECF No. 36]. Additionally, Plaintiff filed a Motion for Appointment of Counsel [ECF No. 25] and a Motion to Compel Defendants to Produce Documents [ECF No. 26], seeking production of her medical and mental health records, her evaluations for gender dysphoria, and any policies or regulations pertaining to treatment of gender dysphoria.

On May 23, 2024, Defendant Marshall filed a second Motion to Dismiss [ECF No. 42] and Memorandum of Law [ECF No. 43] asserting that Plaintiff's claims for relief had been mooted by her release on parole. Thus, Marshall seeks dismissal of the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. On May 24, 2024, the Wexford Defendants joined in Marshall's second motion to dismiss [ECF No. 45].

On May 30, 2024, Plaintiff responded to the second motion to dismiss arguing that her claims for declaratory and injunctive relief should continue because Defendants "will only violate another person's constitutional rights . . . ." [ECF No. 46 a 2]. Plaintiff also attempts to amend her complaint to request compensatory damages in the amount of $85,000, which was not included in the initial complaint. [*Id.* at 2-3].

On June 7, 2024, Marshall filed a reply brief, in which the Wexford Defendants also joined, again asserting that Plaintiff's claims for declaratory and injunctive relief are moot and further arguing that Plaintiff cannot amend her complaint through

briefing in opposition to a motion to dismiss. Defendant Marshall further asserts that, if the Court were to find that Plaintiff's initial complaint appropriately sought monetary damages and were to accept her amended claim for damages, any monetary damages against Marshall in his official capacity are barred by the Eleventh Amendment and he is entitled to qualified immunity in his individual capacity. [ECF No. 47]. These matters are ripe for resolution.

## II. Standard of Review

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy. U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). For this Court to exercise subject matter jurisdiction over an action, "the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided." *Ross v. Reed*, 719 F.2d 689, 693 (4th Cir. 1983) (emphasis in original). "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue." *Taylor v. Riverside Reg'l Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)); *see also United States v. Villalta*, 615 F. App'x 157, 158 (4th Cir. 2015) (dismissing appeal challenging term of imprisonment as moot based upon appellant's release from prison); *United States v. Hardy,* 545 F.3d 280, 284-85 (4th Cir. 2008) (noting that appellant's release from prison during pendency of appeal

mooted challenge to revocation of supervised release and imposition of prison sentence); *Friedman's, Inc. v. Dunlap,* 290 F.3d 191, 197 (4th Cir. 2002) ("[W]hether we are presented with a live case or controversy is a question we may raise *sua sponte* since mootness goes to the heart of the Article III jurisdiction of the courts."

Rule 12(b)(1) of the Federal Rules of Civil Procedure, which is cited by Defendants herein, governs dismissal for lack of subject matter jurisdiction and a moot complaint is properly considered for dismissal under Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1); *see also Nhung Thi Tran v. Holder*, DKC-10-2503, 2011 WL 3236098, at *1 (D. Md. July 27, 2011) ("[M]ootness goes to the 'heart' of the court's Article III jurisdiction . . . ."); *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005) ("As mootness creates a jurisdictional defect, respondents' motion will be treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)."). Similarly, Rule 12(h)(3) of the Federal Rules of Civil Procedure permits a district court to dismiss a civil action at any time if it appears that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Duffield v. Memorial Hosp. Ass'n*, 361 F. Supp. 398 (S.D. W. Va. 1973), *aff'd sub. nom. Duffield v. Charleston Area Medical Ctr.*, 503 F.2d 512 (4th Cir. 1974); *see also Bolin v. Chavez*, 210 F.3d 389 (10th Cir. 2000) (permitting *sua sponte* dismissal for lack of subject matter jurisdiction under Rule 12(h)(3) of the Federal Rules of Civil Procedure); *Dement v. W. Va.*, No. 2:20-cv-00388, 2020 WL 5502305, at *1 (S.D.W. Va. Sept. 11, 2020) (*sua sponte* dismissal under Rule 12(h)(3) for lack of subject matter jurisdiction).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

## III. Discussion

As noted by Defendant Marshall's second motion to dismiss, Plaintiff was approved for release on parole on March 13, 2024, and was released from SMCC on April 14, 2024. [ECF No. 43, Ex. A]. Plaintiff now resides in Milton, West Virginia, and is no longer incarcerated at a WVDCR facility or subject to the restrictions of P.D. 411.00. [ECF No. 39]. Consequently, as asserted by Defendants, the declaratory and injunctive relief Plaintiff seeks "would have no practical impact on Plaintiff" and she "no longer has an interest in the constitutionality of Policy Directive 411.00." [ECF No. 43 at 4]. Therefore, these claims are moot.

However, an exception to the mootness doctrine exists when the claim is "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). As noted by Defendants, this exception applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)

(internal quotation marks and brackets omitted). [ECF No. 43 at 4-5]. Nonetheless, "[m]ere conjecture that the plaintiff may return to a prison facility and again face the alleged wrong is not sufficient to meet the mootness exception." *Shannon v. Porter*, No. 3:16-cv-02048, 2016 WL 3211539, *2 (S.D.W. Va. 2016) (citing *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996)). [*Id.*] Defendants assert that "there is no evidence that indicates that Plaintiff will ever be confined in a WVDCR facility or be subject to Policy Directive 411.00 again" and, therefore, "Plaintiff's claims remain moot and must be dismissed." [*Id.* at 5].

The undersigned agrees that the "capable of repetition" mootness exception does not apply here. Whether Plaintiff will ever again be confined in a WVDCR facility or again be subject to Policy Directive 411.00 is pure conjecture that will not confer subject matter jurisdiction upon this Court for further consideration of Plaintiff's claims for declaratory and injunctive relief. Nor is Plaintiff's mere speculation that Defendants will violate someone else's constitutional rights persuasive or sufficient to save Plaintiff's claims for declaratory and injunctive relief.

Moreover, as aptly noted by Defendants' reply to their second motion to dismiss, Plaintiff's initial complaint did not seek compensatory damages and she may not amend her complaint through a response to a motion to dismiss. [ECF No. 47 at 2-3]. While Plaintiff's complaint did make a request for "punitive" damages, such a claim is derivative of a claim for compensatory damages, which is absent here. *See, e.g., Garnes v. Fleming Landfill, Inc.*, 413 S.E.2d 897, 908 (W. Va. 1991) (in West Virginia, punitive damages may not be awarded without a finding of compensatory

8

damages and must bear a reasonable relationship to actual damages); *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 100 (4th Cir. 1991) ("Punitive damages may be awarded only if actual damages are awarded.") (citing *Carroway v. Johnson*, 139 S.E.2d 908, 910 (S.C. 1965)); *Dean v. Wright Med. Tech., Inc.*, 593 F. Supp.3d 1086, 1103 (D. Colo. 2022) (a claim for punitive or exemplary damages is auxiliary to a claim for actual damages); *Mills v. Owsley Cty., Ky.*, 483 F. Supp. 3d 435, 457 (E.D. Ky. 2020) (a claim for punitive damages is tied to claims for compensatory damages under state and federal law; thus, "without a factual allegation of actual compensatory damages, punitive recoveries cannot be sustained.") (quoting *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky. Ct. App. 1980) (other citations omitted)). Consequently, the Court **FINDS** that Plaintiff's claim for punitive damages was inappropriately pled and that there is no proper claim for monetary damages that would sustain this civil action considering Plaintiff's release from custody. Likewise, Plaintiff's motions for appointment of counsel and for production of various documents are mooted by her release from custody.

## IV. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that Defendant Marshall's second Motion to Dismiss [ECF Nos. 42], in which the Wexford Defendants join [ECF No. 45], is **GRANTED** and this civil action is **DISMISSED AS MOOT** pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure. It is further **ORDERED** that Defendants' first Motions to Dismiss [ECF Nos. 19 and 22]

9

and Plaintiff's Motions for Appointment of Counsel and for Production of Documents [ECF Nos. 25 and 26] are **DENIED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: July 25, 2024

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE